**Electronically Filed
Intermediate Court of Appeals
29419
26-JAN-2011
02:03 PM**

NO. 29419

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

LARRY D. WRIGHT and CAROL A. WRIGHT,
Plaintiffs/Counterclaim Defendants-Appellees,
v. FAY WILLIAMS, Defendant-Appellee, and
JACK THOMPSON, Defendant/Counterclaim
Plaintiff-Appellant, and RICHARD B. GOODIN,
Intervenor-Defendant/Counterclaim Plaintiff-Appellee
(CIVIL NO. 05-1-0019)

AND

RICHARD B. GOODIN, Plaintiff-Appellee,
v. LARRY D. WRIGHT and CAROL R. WRIGHT,
Defendants-Appellees
(CIVIL NO. 06-1-172)

AND

RICHARD B. GOODIN, Plaintiff-Appellee,
v. LARRY D. WRIGHT, CAROL R. WRIGHT,
Defendants-Appellees
(CIVIL NO. 06-1-174)

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Jack Thompson (**Thompson**) appeals
from the June 12, 2008 Judgment of the Circuit Court of the Third
Circuit (**Circuit Court**).[1] The Judgment awards damages in a

---

[1] The Honorable Glenn Hara presided.

breach of contract action to Plaintiffs-Appellees Larry D. and Carol R. Wright (the **Wrights**) in the amount of $125,000.00, offset by the alleged purchase price of $25,000.00 and rental arrears totaling $7,655.33, stemming from a February 9, 2003 agreement for the sale of certain real property located in Leilani Estates on the island of Hawai'i (**Property**).

On February 9, 2003, the Wrights and Thompson signed a handwritten agreement, prepared by Mrs. Wright, that stated in its entirety (**2/9/03 Agreement**):

> To whom it may concern:
> Larry D. and Carol R. Wright will pay rent to Jack Thompson a monthly amount of $400.00 (Four Hundred Dollars) for property & house in Lelani [sic] Estates. All rent will be applied to purchase price. Purchase price $25,000.00.

Shortly before the parties signed the 2/9/03 Agreement, Thompson's father, who had held title to the Property, died. Based on his father's Will, Thompson believed that he would inherit the Property. At trial, Mr. Wright testified that the purchase price was to be paid "[a]fter the probate", that he and his wife would wait one year for "the probate and him to get the papers up for us to sign", and that the Wrights "would pay [Thompson] $400 a month until he did so."[2] The Wrights immediately moved into the Property, i.e., on February 9, 2003. The Wrights paid $400 per month to Thompson for a period of 14 months, but then terminated the payments when they learned that the Property was distributed out of the probate to Thompson's mother, Fay Williams (**Williams**), for delinquent child support

---

[2] At trial, Thompson testified, "I wasn't interested in rent. I wanted to be paid, but they, uh, said something about probate and that that would take a while and that they would pay rent until that time." Thompson believed he would acquire the Property from his father because Thompson "was his only son and [Thompson] was his only heir, and [they] had a will drawn up." When asked whether he was aware that he had to probate his father's estate in order to convey the Property, Thompson stated that, at the time of the agreement with the Wrights, he was not, and that he had only heard the word "probate" maybe once or twice in his life and had no idea what that meant.

2

payments, and not to Thompson. The Wrights nevertheless continued to occupy the Property.

As found by the Circuit Court, the Wrights thereafter attempted to purchase the Property from Williams pursuant to a September 27, 2004 offer entitled "Agreement of Real Estate Sale," in which they proposed to purchase the Property from Williams for $30,000.00. Thompson and the Wrights testified, varyingly, regarding a meeting held in November of 2004 at the Wrights' attorney's office. It appears that Williams had countersigned the September 27, 2004 offer and Thompson brought a signed copy to the meeting. The Wrights testified that after they and their attorney reviewed Williams' signature, "the agreement was returned to Jack Thompson who was not willing to relinquish possession of it." Thompson testified that the attorney said that the form of the agreement was not acceptable and gave it back to him, saying, "We can't use this." Apparently, no copies were made. A fully executed copy of the agreement was not in evidence.

On November 12, 2004, the Wrights' attorney sent a quitclaim deed to Williams and asked her to sign it and send it back to him. She did not. On December 6, 2004, the Wrights' attorney again wrote to Williams: "Your son has informed by [sic] my clients, Larry and Carol Wright, that you are no longer willing to sell your Leilani Estates property for the contract price of $30,000.00." The letter further stated that Williams' "refusal to sell the property for the original purchase price constitutes a breach of the Agreement of Real Estate Sale dated September 27, 2004." The letter threatened a lawsuit against Williams and Thompson to, *inter alia*, enforce that agreement.

Thompson testified that, after the November meeting with the Wrights and their attorney, he realized he had been mistaken about an encroachment issue and the value of the Property. After conferring with Williams, Thompson had contacted

the Wrights, and requested a purchase price of $125,000, which they rejected. Thompson further testified that his mother became concerned that she would be dragged into a lawsuit in Hawaii and then conveyed the Property to him by way of a Quitclaim Deed dated December 23, 2004, and recorded on January 12, 2005.

On January 20, 2005, the Wrights filed suit against Williams and Thompson, seeking to enforce the agreement with Williams or, alternatively, the 2/9/03 Agreement with Thompson. Thompson filed counterclaims for unpaid rent and possession.

It appears that, some time after the lawsuit was filed, Thompson agreed to sell the Property to Richard Goodin (**Goodin**). The Property was conveyed by Thompson to Goodin via a Warranty Deed dated November 4, 2005 and recorded on January 10, 2006. Goodin filed separate actions against the Wrights for ejection and for intervention in the Wrights' action. The three cases were consolidated in the Circuit Court.

Following a bench trial, the Circuit Court entered Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**) and the above-referenced Judgment. In its FOFs and COLs, the Circuit Court found, *inter alia*, that: (1) "As Williams did not deliver an acceptance to [the Wrights'] offer to purchase the Property on terms reflected in an Agreement of Real Estate Sale dated September 27, 2004, these negotiations did not result in any agreement as to the sale of the Property between Williams and [the Wrights]"; and (2) Thompson breached the 2/9/03 Agreement with the Wrights when he conveyed the Property to Goodin after he acquired title to it. Thompson timely filed an appeal. No other appeals were taken from the Circuit Court's Judgment.

On appeal, Thompson argues that the Circuit Court erred in finding that he breached the agreement with the Wrights and challenges various of the Circuit Court's FOFs and COLs. Specifically, Thompson argues that no breach occurred because: (1) a condition precedent to the contract -- that Thompson obtain

title to the Property from his father's estate through the probate process -- never occurred; (2) the Wrights discharged and materially breached the contract by ceasing to pay rent; (3) the parties mutually abandoned and rescinded the 2/9/03 by seeking to negotiate the sale anew; and (4) the doctrine of impossibility discharged Thompson's obligation when he was "divested" of ownership in the property pursuant to a probate court order.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Thompson's contentions as follows:

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." <u>Chun v. Bd. of Trs. of Employees' Ret. Sys. of Haw.</u>, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate] court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

<u>Id.</u>

The Circuit Court's FOFs and the record in this case strongly support Thompson's argument that the Wrights abandoned the 2/9/03 Agreement.

"A contract is abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces." <u>Kuroda v. Kuroda</u>, 87 Hawai'i 419, 427, 958 P.2d 541, 549 (App. 1998). Abandonment need not be express.

Dring v. Dring, 87 Hawai'i 369, 376, 956 P.2d 1301, 1308 (App. 1998). A party's intent to abandon the contract may be inferred from the facts and circumstances. Id. Furthermore, as this court has recognized:

> Abandonment is evidenced as long as there is a voluntary relinquishment of a right or of property with the intention of not reclaiming it or reassuming its ownership or enjoyment. Intent to abandon and an external act effecting the intent must be shown. Abandonment need not be expressed; it may be inferred from the conduct of the parties and the attendant circumstances.

Anderson v. Oceanic Props., Inc., 3 Haw. App. 350, 358, 650 P.2d 612, 618 (App. 1982). Abandonment results in a discharge of all obligations under the contract. Dring, 87 Hawai'i at 376, 956 P.2d at 1308.

Although Thompson argued below that the Wrights abandoned the 2/9/03 Agreement, the Circuit Court did not expressly consider abandonment in its FOFs and COLs.

"[T]he substitution of a new contract in place of the original one may constitute an abandonment of the original agreement." 77 AM. JUR. 2D VENDOR AND PURCHASER § 447 (2010). Here, the Wrights' pursuit of a new contract demonstrates their intent to abandon the original one. Mrs. Wright testified that after she learned about the probate outcome, she and her husband viewed the contract as no longer in force or effect.[3/] In accordance with this understanding, the Wrights ceased making payments to Thompson and instead pursued a new contract with Williams. They actively sought the new agreement and drafted it themselves. They agreed to less favorable terms -- a 20% increase in the purchase price and a release of Williams' liability for an encroachment issue. Finally, Mr. Wright testified that they were prepared to finalize the transaction with Williams at their

---

[3/]    At trial, the Wrights' counsel conceded that the Williams agreement superseded the contract with Thompson.

attorney's office, and his wife brought $30,000 in cash to that end.

The Wrights' conduct and testimony clearly indicate they voluntarily relinquished any rights they had to enforce the contract with Thompson. The only evidence to the contrary, *i.e.*, their continued occupation of the Property, is equally consistent with their intent to abandon the agreement with Thompson and pursue a new one with Williams. See, e.g., Oceanic Props., Inc., 3 Haw. App. at 359, 650 P.2d at 619 (purchaser's failure to deposit additional moneys into escrow, failure to make further payments, and failure to obtain financing "clearly evinced an intent not to go through with any part of her bargain"). Here, the Wrights discontinued payment to Thompson and actively sought to enter a new agreement with Williams. Indeed, after Williams allegedly backed out of the Agreement of Real Estate Sale dated September 27, 2004, on their behalf, their attorney sent a demand letter insisting on Williams' performance under that agreement. The evidence in the record clearly shows that Thompson likewise abandoned the 2/9/03 Agreement or acquiesced in the abandonment by the Wrights. In light of the substantial, uncontroverted evidence in the record, we are left with a definite and firm conviction, and therefore conclude, that the Circuit Court erred in failing to find that the 2/9/03 Agreement was abandoned.[4]

For these reasons, we reverse that portion of the Circuit Court's June 12, 2008 Judgment awarding damages against

---

[4] We need not reach Thompson's other arguments.

7

Thompson and to the Wrights, and affirm the Judgment in all other respects.

DATED:  Honolulu, Hawai'i, January 26, 2011.

On the briefs:

Paul J. Sulla
for JACK THOMPSON, Defendant/
Counterclaim Plaintiff-Appellant
and for FAY WILLIAMS,
Defendant-Appellee and

Larry D. Wright and
Carol D. Wright
Pro Se Plaintiffs/Counterclaim
Defendants-Appellees

Richard B. Goodin
Pro Se Intervenor-Defendant/
Counterclaim Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge